EXHIBIT D

# MCCLOSKEY, MINA, CUNNIFF & FRAWLEY, LLC
### ATTORNEYS AT LAW

Jay P. McCloskey
Thimi R. Mina *
Alfred C. Frawley IV **
John W. Evans ***

12 City Center
Portland, ME 04101
Telephone: (207) 772-6805
Facsimile: (207) 879-9374

www.lawmmc.com

Michael A. Cunniff **
*Of Counsel*

Paula D. Silsby
*Of Counsel*

*Via Certified United States Mail*

December 13, 2023

Patrick Keliher, Commissioner
Maine Department of Marine Resources
32 Blossom Lane
Augusta, Maine 04330

Re:   *Black Box Tracker*

Dear Commissioner Keliher:

      Please be advised that the Sustainable Maine Fishing Foundation ("SMFF") has retained our office in connection with the Maine Department of Marine Resources' ("MDMR") plan to implement and enforce the "Addendum XXIX to Amendment 3 to The American Lobster Fishery Management Plan" (the "Addendum") promulgated by the Atlantic States Marine Fisheries Commission ("ASMFC"). The SMFF contacted our office in anticipation of the December 15th date for compliance with MDMR's tracking program based on the concerns of its membership about the nature and extent of the electronic tracking requirement as implemented by MDMR. SMFF's members are also concerned with the tracking requirement's potential impact on obtaining and maintaining the federal fishing licenses that are essential to the pursuit of their livelihoods.

*Privacy Concerns.*

      Following a thorough review of the Addendum and its implications for federal license holders, it is SMFF's position that the current regulation and the proposed implementation scheme runs afoul of the right to a reasonable expectation of privacy guaranteed by the Fourth Amendment to the United States Constitution. In the face of these privacy concerns, however, SMFF and its members desire to work with federal and state authorities in support of a monitoring program that contributes to the salutary objectives of the Addendum, provided there are certain limitations and safeguards in place to ensure their members' privacy from unreasonable government intrusion.

      It is the SMFF's position that the Addendum's around the clock electronic monitoring program amounts to an illegal search. The United States Supreme Court has established that tracking by long-term Global Positioning Systems ("GPS") constitutes a search for purposes of a constitutional analysis under the Fourth Amendment. *See,*

---

*Admitted in Maine and the District of Columbia
**Admitted in Maine and Massachusetts
***Admitted in Massachusetts and Maine Bar Applicant

**McCloskey, Mina, Cunniff & Frawley, LLC**
Patrick Keliher, Commissioner
Maine Department of Marine Resources
December 12, 2023

Page 2 of 7

*Carpenter v. United States*, 138 S. Ct. 2206, 2217, 201 L. Ed. 2d 507 (2018). A search is unconstitutional when it unnecessarily infringes upon a "reasonable expectation of privacy." Defining a "reasonable expectation of privacy" outside of criminal proceeding is a context-specific evaluation, and courts have held that businesspeople have a right to conduct their business without unreasonable entry upon their commercial property by their industry regulators. *See, e.g., Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 487 (S.D.N.Y. 2019). To protect that privacy interest, an administrative action – such as that taken by MDMR in implementing the Addendum, along with the Addendum itself – must have a limited scope, a relevant purpose, and be specific in its demands in order to comply with the Fourth Amendment. *Id.* The primary thrust of SMFF's challenge is that the Addendum does not meet those criteria.

As promulgated, the current Addendum and MDMR's proposal to implement it demands that "[t]his vessel tracker must remain powered and transmitting when the vessel is in the water regardless of landing state, trip type, location fished or target species." The Addendum identifies four objectives for this "24/7" tracking requirement: 1) to improve information available to fishery managers and stock assessment scientists, 2) to support risk reduction efforts due to Atlantic Large Whale Take Reduction Plan, 3) to support the development of offshore renewable energy and the conservation of US Waters, and 4) to promote improved fishery management and offshore enforcement of federal lobster fisheries in the Exclusive Economic Zone ("EEZ").

The Atlantic Coastal Fisheries Co-Operative Management Act ("ACA") empowers the states and the ASMFC to "implement regulations to govern fishing in the exclusive economic zone." The ACA authorizes the ASMFC to draft regulations within the EEZ "to support and encourage the development, implementation, and enforcement of effective interstate conservation and management of Atlantic coastal fishery resources." 16 U.S.C. § 5101. While the Addendum certainly addresses issues involving federally regulated fisheries within the EEZ, the breadth of data being collected, the requirement that the tracker be active even when boats are not fishing, and the lack of specified enforcement protocols is beyond the scope of the ASMFC's authority.

Indiscriminate "24/7" electronic tracking of federally-permitted Maine lobster fishermen is beyond the reasonable scope of the Addendum's goals for improved visibility within the federal fishery. The Addendum requires, for example, that the "vessel tracker must remain powered and transmitting when the vessel is in the water regardless of landing state, trip type, location fished or target species." Put differently, the tracker will monitor a lobster vessel's movements at a ping rate of once per minute even when the vessel is not fishing in federal waters or is not fishing for lobster in the first place. Many of the SMFF's members use their boats in multiple capacities including their own private enjoyment and/or for scallop, menhaden, and tuna fishing. Many of these endeavors occur exclusively

McCloskey, Mina, Cunniff & Frawley, LLC
Patrick Keliher, Commissioner
Maine Department of Marine Resources
December 12, 2023

Page 3 of 7

in state waters. The vessel tracker will nevertheless monitor the minute-by-minute movements of these vessels regardless of where and what they are doing.

While the Addendum is descriptive about how more spatial information will improve conservation efforts in the federal lobster fishery, it fails to justify how and why conservation efforts require around the clock monitoring and minute-by-minute data transmission when federally-permitted lobster vessels are not fishing for lobster in federal waters. Indeed, we understand that a similar tracker installed on scallop fishing vessels is only required to be activated once a vessel enters scallop waters, and once activated, the tracker only pings once every hour. By requiring tracking only to the extent necessary, the scallop tracker allows for monitoring and enforcement of the scallop fishery (which, unlike the lobster fishery, has specific quotas) without infringing on the vessel operators' rights to privacy when they are not scallop fishing and does not reveal the precise location of their fishing efforts, information that is proprietary to each fisherman. The tracker that lobster fishermen are required to install, on the other hand, will monitor their movement of the vessels once every minute, even while they are on day trips with their family, steaming to port for repairs, or engaging in numerous other activities that have no connection to the lobster fishery.

The Addendum's listed exceptions to the tracking requirement also highlight the reasonableness of the SMFF's concerns. For example, the Addendum states that the tracking requirement does not apply to boats licensed to fish in Lobster Management Area 6 because that area covers only New York and Connecticut state waters. Despite the fact that right whales do not frequent state waters off the coast of Maine like they do in New York and Connecticut waters, there is no similar exception of vessels that may be federally permitted but are fishing their traps exclusively in Maine state waters. Moreover, because the Addendum exempts Maine fishermen who do not hold federal lobster permits, it is clear that the goals of the tracking program apply only to federal waters and that tracking fishing effort in federal waters is the Addendum's exclusive priority. For this reason, SMFF requests that fishermen employing their traps exclusively in state waters not be required to activate their tracking device unless or until they intend to set traps in federal waters, even if they hold a federal permit. Again, this would somewhat mirror existing regulations on scallop fishing vessels, which are only under an obligation to turn on their vessel monitoring devices when they are fishing in federal zones.

In sum, tracking lobstermen when they are not fishing for lobsters in federal waters is not necessary to implement the goals of the tracking program. To the contrary minute-by-minute tracking of lobster vessels at all times is an unreasonable invasion of privacy that violates the Fourth Amendment to the United States Constitution.

McCloskey, Mina, Cunniff & Frawley, LLC
Patrick Keliher, Commissioner
Maine Department of Marine Resources
December 12, 2023

Page 4 of 7

*Confidentiality Concerns.*

SMFF also has additional concerns relating to the confidentiality of the data collected and how MDMR and federal regulators will subsequently use that data. As you know, the location of individual fishing grounds are trade secrets in the lobster industry. The knowledge and experience gained through years of hard work enable SMFF's members to optimize their catch based on the location and positioning of their traps. The fact this information is now being collected and stored with minute-by-minute precision by a private third-party custodian, using a device manufactured in China, creates an understandable concern that these trade secrets could find their way to a public forum and erase hard-won business advantages. The "ping rate" of the tracker, coupled with the tracker's connection to a permit ID, would make a particular boat's fishing grounds and trap locations easily identifiable to competitors or those with adverse economic interests.

The SMFF's members are particularly concerned with the confidentiality of the information collected on their boats based on one of the stated purposes of the Addendum: to promote "the development of offshore renewable energy and conservation of US waters." Leaving aside the obvious questions as to what legitimate regulatory authority exists for the AMFSC to participate in the "development of offshore renewable energy," an altogether reasonable concern emerges that data concerning the precise movements of Maine's federally permitted lobster fleet could find its way to energy developers, environmental groups, and other stakeholders that have economic interests that are adverse to Maine's lobster fishermen. This potential use of data to promote these potentially adverse interests underscores the fact that once fishing trip data is recorded and stored, the SMFF's membership will have no control over where it goes or whom it is shared with. Thankfully, MDMR has begun to address these confidentiality concerns by stating the Atlantic Coastal Cooperative Statistics Program ("ACCSP") will maintain the confidential information and it will be accessible only to appropriate state or federal agencies. MDMR, however, does not define which of these agencies it deems to be appropriate or otherwise limit what these agencies can do with that information. The SMFF is also aware that ACCSP data has been subject to subpoenas in the past and the Addendum provides no assurances that their vessels, under the new monitoring policy, have any additional protections from third party subpoenas. Can this information be shared with energy developers in connection with the permit application process? Will it be shared with regulators of other fisheries? Because these and similar questions remain unanswered, SMFF respectfully requests some additional insight into what agencies will be included in the definition of "appropriate state or federal entities" as well as assurances that the data will not be shared in any form with private third parties.

McCloskey, Mina, Cunniff & Frawley, LLC
Patrick Keliher, Commissioner
Maine Department of Marine Resources
December 12, 2023

Page 5 of 7

*Enforcement Concerns.*

  MDMR's implementation of the Addendum requires each federally permitted Maine lobster fishermen to install a so-called "black box" on their fishing vessels that will transmit data at a ping rate of once per minute continuously throughout the life of the device. Leaving aside the constitutional and confidentiality concerns raised by the required installation of such a tracker, how MDMR intends to enforce this tracking requirement remains unclear. Will similar penalty provisions that apply to the scallop tracker requirement apply with equal force to the lobster vessel tracker, or does MDMR intend to adopt an entirely new regulatory scheme? Will penalties be the same for vessels that fail to use the tracker during recreational use of the vessel? Will the tracking requirement be enforced the same in federal and state waters? Does MDMR intend to adopt any safe harbor provisions? SMFF's membership, which was given little notice of the tracking requirement and minimal instructions on how to operate the tracker, remains unclear on how the electronic tracking requirement will be enforced.

  As far as the SMFF can understand it, MDMR's implementation of the Addendum identifies five violations of the tracking requirement: 1) fishing without the tracker, 2) removing the device at any point in time without written approval, 3) operating the vessel without the tracker in State coastal waters, even when not fishing for lobster, 4) failing to maintain the tracking device in an operational condition, minimally powered by an internal battery, when a permitted vessel is docked, moored, or removed from the water, and 5) tampering with the device in any way. Each of these violations could occur intentionally or unintentionally, and many could occur without any interference by the vessel operator themselves. The Addendum, as adopted by the MDMR, states that if a device malfunctions the license holder must notify MDMR and work to restore the device to operability in a timely manner before embarking on any subsequent fishing trips. What if a fisherman is unaware his device is malfunctioning and therefore fails to notify MDMR? What if a fisherman is unable to repair the device prior to his subsequent fishing trip? MDMR does not identify any specific penalties for non-compliance or suggest how non-compliance will be handled by the department when a fisherman fails to follow those instructions or is unable to get their tracker operatable despite best efforts. SMFF has been left to infer that penalties will mirror existing enforcement efforts around right whale regulations.

  SMFF's membership needs additional information on the consequences of noncompliance. For example, SMFF's membership needs to know before the December 15, 2023, implementation deadline whether a violation is subject to an immediate recission of federal or state fishing licenses, whether a violation would preclude renewal of any permits, or whether a violation will result in an initial warning and then a series of escalating fines. Fishermen also need to have a better understanding of their due process rights in the event of an alleged violation, specifically what hearing procedures will be used and what rights they have to appeal any adverse findings.

McCloskey, Mina, Cunniff & Frawley, LLC
Patrick Keliher, Commissioner
Maine Department of Marine Resources
December 12, 2023

Page 6 of 7

*Conclusion.*

  To be clear, SMFF and its membership are not opposed to the overall goals of the tracking program. Many of SMFF's members have long proposed anonymous data collection efforts that can be used to target general areas where fishing effort and the right whale population overlap. For understandable reasons, however, they are opposed to individualized surveillance of each vessel in the lobster fleet on a minute-by-minute basis regardless of whether or not the vessel is fishing for lobster in federal waters. They oppose individualized data collection that could undermine their right to keep their proprietary commercial information confidential, and they oppose the collection of information that could be used against them by adverse economic interests. In sum, a monitoring program similar to the scallop tracking requirement, meaning one that requires trackers in federal zones with a reasonable ping rate while fishing effort is underway, is understandable. 24/7, minute-by-minute monitoring, including when a boat is docked overnight or otherwise engaged in lobster fishing, is unreasonable.

  Based on the foregoing concerns, the SMFF respectfully requests that the December 15, 2023, compliance deadline be stayed until the following fishing season in order for MDMR to address the concerns listed herein and to provide further information about the tracking program. While the SMFF understands the Addendum itself was published in March 2022, MDMR's protocols for implementing that Addendum were not announced until September 13, 2023, with barely a 30-day comment period. Many of the SMFF's members were unaware of the tracking requirement's full extent and implementation instructions until they received the black box itself, leaving them with little to no opportunity to assess the tracking requirement or analyze its impact on their business operations despite the earlier initial publishing of the addendum.

  Thank you for your attention to this sensitive and difficult issue. Please contact our Office with any questions or additional information regarding the concerns raised above and MDMR's position with respect to delaying implementation of the tracking program in light of the constitutional, confidentiality and enforcement issues identified herein.

Dated: 12/13/2023

Sincerely,

Thimi R. Mina
**Alfred C. Frawley IV**
Attorneys for SMFF
12 City Center
Porland, Maine 04101
tmina@lawmmc.com
afrawley@lawmmc.com