# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **FRANK THOMPSON, JOEL STROUT, JASON LORD, CHRISTOPHER SMITH,** and **JACK CUNNINGHAM,** )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>**PATRICK KELIHER,** in his official capacity as **COMMISSIONER, MAINE DEPARTMENT MARINE RESOURCES,** )<br>)<br>)<br>)<br>Defendant. ) | Docket No. 1:24-cv-00001-JAW |

## DECLARATION OF FRANK THOMPSON

I, **Frank Thompson,** hereby depose and state as follows:

1. My name is Frank Thompson. I am a resident of Vinalhaven, Maine, I am over 18 years of age, and I am a Plaintiff in the above-captioned civil action. I make this Declaration in support of the Plaintiffs' *Motion for Preliminary Injunction*, which seeks to enjoin the enforcement of a rule issued by the Maine Department of Marine Resources' ("MDMR") that compels federally permitted Maine lobstermen to install a Particle TrackerOne device on their vessels.

2. I am a lobster fisherman that possesses both State of Maine and federal lobster fishing permits. I have been lobstering in the waters off the coast of Vinalhaven for over 55 years. I presently fish 800 number of traps in federal waters known as the so-called "Exclusive Economic Zone."

3. I am also the co-owner with my wife, Jean Thompson, of Fox Island Lobster Company, LLC ("FILCO"), a wholesale lobster dealer. FILCO purchases lobsters from other Vinalhaven fishermen and then transports these lobsters (a process known as "smacking") to Rockland for sale to processors and other wholesale buyers. I often use my lobster fishing vessel

to smack these lobsters. I also use my vessel for activities unrelated to lobster fishing, including but not limited to day trips with my family, tuna fishing, menhaden fishing, and scallop fishing. Additionally, I need to travel on my vessel when equipment repairs become necessary.

4. By virtue of my status as both a lobster fisherman and a lobster dealer, I closely follow and am familiar with regulations governing the American lobster fishery in the Gulf of Maine, including plans, guidelines and recommendations issued by the Atlantic States Marine Fishery Commission ("ASMFC"), as well as rules and regulations issued by MDMR. Accordingly, I have read and am familiar with the ASMFC's "Addendum XXIX to Amendment 3 to The American Lobster Fishery Management Plan; Addendum IV to The Jonah Crab Fishery Management Plan" (the "Addendum") as well as the MDMR rule entitled "Chapter 25.98 Electronic Tracking Requirements for Federally Permitted Lobster and Jonah Crab License Holders" (the "MDMR Rule"). I have received a Particle TrackerOne tracking device, as well as installation instructions for the tracker provided by MDMR. The written materials accompanying the TrackerOne informed me that I was required to install the device on my fishing vessel by December 15, 2023 in order to maintain my federal lobstering permit.

5. MDMR requires that my vessel be monitored by the TrackerOne device 24 hours a day, 7 days a week while my vessel is operational and every 6 hours when it is not. MDMR has informed me that I will need to have my tracking device powered on at all times, even when I am fishing in state waters, when I am engaged in other fishing-related activities such as scalloping or smacking, or even when it is being used for exclusively recreational activities. I was also informed that I am responsible for diligently checking that the TrackerOne is actively reporting my vessel's location on a minute-by-minute basis while my vessel is operating. I understand that my vessel will be tracked at all times, even when I am using it for exclusively personal purposes and not

fishing in federal lobster areas. Specifically, MDMR has informed me that the "vessel tracker must remain powered and transmitting when the vessel is in the water regardless of landing state, trip type, location fished or target species." I further understand that the tracker will monitor my vessel's movements at a "ping" rate of once per minute even when the vessel is not fishing in federal waters or is not fishing for lobster.

6.  This tracking requirement stands in stark contrast to the tracking requirement for scallop fishing vessels, which also must have a tracker installed on board. My understanding is that the scallop vessel operator, however, is only required to activate the tracker once the vessel leaves port for federal scallop waters, and once activated, the tracker only "pings" once every hour. By requiring tracking only to the extent necessary, the scallop tracker allows for monitoring and enforcement of the scallop fishery (which, unlike the lobster fishery, has specific quotas) without infringing on the vessel operator's rights to privacy when they are not scallop fishing. Nor does the tracking program for scallop fishermen reveal the precise location of their fishing efforts, information that is proprietary to each fisherman, only the general location of the vessel.

7.  Although I understand that if I do not comply with the tracking requirement, I face potential sanctions or adverse impacts to my federal lobster fishing license, I am unclear as to penalties that can be imposed or how the tracking requirement will be enforced. MDMR has simply informed fishermen such as myself that if a device malfunctions, the license holder must notify MDMR and work to restore the device to operability in a timely manner before embarking on any subsequent fishing trips. Otherwise, failure to maintain the device in operating condition is "unlawful." Based on that minimal guidance, I am unclear as to whether the penalty provisions applicable to the scallop tracking program will apply with equal force to the lobster vessel tracker or whether there are new penalties for the "unlawful" conduct described by the MDMR Rule. I

am also unclear as to whether there are any warnings that will be issued to first time violators, or whether the consequences of an intentional violation will be different from an unintentional violation where, for example, a fisherman is unaware his device is malfunctioning and therefore fails to notify MDMR.  I am also unclear as to how MDMR will handle situations where the tracking device malfunctions before leaving port and a fisherman is unable to repair it in advance of a planned fishing trip.  To my knowledge, MDMR does not identify any specific penalties for non-compliance or suggest how non-compliance will be handled by the department when a fisherman fails to follow those instructions or is unable to restore operation of their tracking device despite best efforts.  I also have not received information on any rights I may have to appeal a perceived violation of the electronic tracking policy.

8. I have serious concerns that the mandated data collection and accompanying enforcement actions will negatively affect my business operations.  For example, I have received no privacy agreement or user access information that would enable me to see what data will be collected, how that data will be used, or the circumstances under which that data can be shared.  Without user access, I am unable to view this information or understand what data the tracker is collecting.  I have learned through my online research and into the TrackerOne device and review of the TrackerOne data sheet that is available on Particle's website that, in addition to determining a user's GPS coordinates, the device is capable of collecting audio information and appears to have a predictive algorithm that can anticipate vessel movements.  I also understand that it is Bluetooth and Wifi compatible.  I am concerned about how my trip information is being protected by MDMR, if at all.

9. I am a fifth-generation lobster fisherman.  Decisions concerning the placement of my traps are the result of hard work and knowledge that has been passed down to my family over

decades. In the context of the lobster industry, this knowledge is, in every sense of the term, the equivalent of a trade secret having great monetary value.  It is essential that my trip information remain confidential so that I can retain an important business advantage. To date, I have not been told how long data of my commercial fishing trips will be retained by MDMR, what agencies will have this data accessible, whether the data can be used to enforce other lobstering regulations, whether it can be subpoenaed by third parties or other law enforcement agencies, the manner in which the data is being stored, or any of the other information one would typically expect to be informed of in a customary privacy and security disclosure statement or agreement.

      Dated at Vinalhaven, Maine this 10th day of January, 2024.

                    /s/      <u>Frank Thompson</u>
                               Frank Thompson