UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **FRANK THOMPSON, JOEL STROUT, JASON LORD, CHRISTOPHER SMITH,** and **JACK CUNNINGHAM,** | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) **Docket No. 1:24-cv-00001-JAW** |
| **PATRICK KELIHER,** in his official capacity as **COMMISSIONER, MAINE DEPARTMENT MARINE RESOURCES,** | ) ) ) ) ) |
| Defendant. | ) |

**PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

While the State's Opposition addresses some of the Plaintiffs' concerns about the ParticleOne tracking device, the fact of the matter remains that tracking individual movements on a minute-by-minute basis is not a "minimally intrusive" exercise of governmental authority, particularly when such tracking is not confined to the federal lobster fishery. *Contra State's Opp.* at 2.

### A. The Plaintiffs Remain Likely to Succeed on the Merits.[1]

The State agrees that the MDMR Rule constitutes a search. *Opp.* at 10 n.19. Accordingly, this warrantless search is *per se* unreasonable if it violates a reasonable expectation of privacy and no exception to this presumption otherwise applies. *Arizona v. Gant*, 556 U.S. 332 (2009).

#### 1. The Plaintiffs' Reasonable Expectation of Privacy is Not "Attenuated."

The State claims that the so-called "administrative search exception" applies because the Plaintiffs' expectation of privacy is only "attenuated" when it comes to the federal lobster fishery. *Opp.* at 10-18. Although the State claims that the Plaintiffs propose an "exception to the exception" whereby "an otherwise valid administrative search is unlawful if the search involves a person's movements," *id.* at 12, that is not at all the Plaintiffs' point. Rather, the Plaintiffs argue that when an administrative search invades a "reasonable expectation of privacy in the <u>whole</u> of [an individual's] physical movements," *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (emphasis supplied), that privacy expectation is not as "attenuated" as it would be if the expectation solely related to commercial premises "employed in 'closely regulated' industries." *Opp.* at 11-12 (quoting *New York v. Burger*, 482 U.S. 691, 700 (1987)).

In the end, the reasonableness of an administrative search depends on "balancing the need to search against the invasion which the search entails." *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 536-37 (1967). Although the State cites a number of cases that stand for the proposition that "[t]he owner of commercial property in a closely regulated industry has a reduced expectation of privacy

---

[1] Because the State's arguments with respect to other factors in the analysis primarily rest on their subjective opinion that the MDMR Rule will be no more "than a minimal intrusion on their 'particularly attenuated' privacy interests as operators in the closely regulated commercial lobster fishery," *Opp.* at 25, which the Plaintiffs address below, the Plaintiffs otherwise defer to the points and authorities contained in their opening brief with respect to these factors and do not repeat them here.

1

in those premises," *Opp.* at 11 (quoting *Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010)), it remains that business owners still "possess reasonable expectations of privacy in commercial property with respect to . . . administrative inspections designed to enforce regulatory statutes." *United States v. Hamad*, 809 F.3d 898, 904 (7th Cir. 2016). That expectation of privacy is only heightened (and not "attenuated") in this case because the Rule infringes not only on the Plaintiffs' expectations of privacy in their movements within a regulated environment, it also requires surveillance even when the vessel is not engaged in commercial lobster fishing in federal waters (the only closely-regulated industry the Rule is aimed at). As a result, it is the State that is asking the Court to make an "exception to the exception" when it argues that any "additional intrusion[s]" on privacy rights that occur outside of its self-defined closely regulated industry should be ignored if they are only "occasional incident[s]." *Opp.* at 12 n.22.[2] That is not the law, and "Judges must never forget that while the Constitution okays warrantless searches in some situations, it never okays unreasonable ones." *Rivera-Corraliza v. Morales*, 794 F.3d 208, 217 (1st Cir. 2015) (footnotes omitted).[3] As this Circuit has cautioned, "the *Burger* test is a carefully-drawn screen that [courts] must jealously protect, lest this particular warrantless-search exception destroy the Fourth Amendment." *Id.*

Finally, the fact that the Plaintiffs' trade secrets are at stake only further heightens their expectation of privacy. While the State argues that "[t]he target of an administrative search is often precisely those documents and other materials containing such information," *Opp.* at 14, this is not a case where officials are merely inspecting books and records on-site. Rather, government officials here would be constantly gathering information on the Plaintiffs' movements in order to, among other things, ascertain *their trap locations*, data that will then be uploaded onto a "map interface" that will allow "authorized federal and

---

[2] Of course, these "occasional incidents" are not "incidents" at all, but are rather guaranteed occurrences that will arise every time a fisherman uses his vessel for any of countless reasons she would use it for other than lobster fishing in federal waters.

[3] The State also suggests that applications of the Rule beyond the parameters of the federally regulated lobster fishing industry are not the proper subject of a facial challenge because "plaintiffs mounting a facial challenge must 'establish that no set of circumstances exists under which the [regulation] would be valid." *Opp.* at 12 (citation omitted). But "[t]he proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for who the law is irrelevant, meaning that the focus is on those to whom the law actually applies." *City of Los Angeles v. Patel*, 576 U.S. 409, 418-19 (2015). In this case, the MDMR Rule *always* applies to all federally permitted lobstermen, regardless of how they are using their vessels. Accordingly, it is unconstitutional on its face.

2

state administrators," as well as other "state or federal entities with confidential data access" to "query and visualize trip locations" indiscriminately, seemingly for any purpose (or no purpose at all). ECF No. 1-1 at § 3.2.3. Patterns will emerge that are unique to each fisherman that otherwise would not be readily apparent. While MDMR promises that this information will be kept "confidential," it concedes that this data will be "released to the public in aggregate form" with data from a minimum of only three fishermen aggregated. ECF No. 16-13 at 21. Moreover, the ACCSP confidentiality policy allows any of its partner-agencies to approve *any* authorized user based on the "the individual need of the person to access the confidential data." *Id.* In other words, the policy only extends as far as the partner-agencies want it to, and there are no limits on these agencies' discretion to share this information based on whatever "need" they identify. *Id.*

### 2. The MDMR Rule Is Not Limited in Time, Place and Scope.

Even assuming without conceding that the State has a substantial interest in "offshore enforcement efforts" in federal waters, ECF No. 1-1 at § 2.1,[4] the "time, place and scope" of the MDMR Rule is not in any sense "carefully limited." *Burger*, 482 U.S. at 703. In fact, it is not limited at all. To be reasonable, an administrative search "must be as limited in its intrusiveness as is consistent with satisfaction of the administrative need that justifies it." *Bruce v. Beary*, 498 F.3d 1232, 1248 (11th Cir. 2007). Here, the Rule requires tracking of all federally licensed lobster vessels, "regardless of landing state, trip type, location fished or target species." ECF No. 1-1 at Appx. B. It is not limited to the offshore federal lobster harvests that serve as its impetus. *Ruskai v. Pistole*, 775 F.3d 61, 69 (1st Cir. 2014) ("While we will not require the government to adopt the least intrusive practicable alternative, there must be a fairly close fit between the weight of the government's interest in searching and the intrusiveness of the search").

As the State concedes, the MDMR Rule has "no obvious restrictions on timing." *Opp.* at 17. Indeed, what makes this case unique is not that the MDMR Rule allows surveillance at any time, it is that it requires surveillance *all of the time*. Although "a regime may pass the *Burger* test even if there are no time limits .

---

[4] *But see Opp.* at 3 n.3 (conceding that fishing within the EEZ "is the responsibility of the federal government").

3

. . if such limits would make inspections unworkable," there is no reason that reasonable time limitations – such as requiring tracking only upon entry of a vessel into federal waters – would "render the entire inspection scheme unworkable and meaningless." *Rivera-Corraliza*, 794 F.3d at 221-22 (quoting *United States v. Dominguez—Prieto,* 923 F.2d 464, 470 (6th Cir. 1991)).  To the contrary, the objectives of the MDMR Rule could be readily accomplished simply by mandating that fishermen turn on their trackers when they enter federal waters and then checking their trip tickets against their tracking data to ensure compliance.  While the State argues that constant surveillance is the only viable alternative to "allowing vessel owners to turn the tracking device on and off at their discretion – for example, when they self-report that that they are not using the vessel to fish for lobster," *Opp.* at 19, the data collection program already envisions that the ACCSP will compare the electronic tracker data with self-reported data in order to ensure compliance with the Rule.  ECF No. 1-1 at § 3.2.3.  In short, "there is no basis to believe … spot checks" are "unworkable," *Patel*, 576 U.S. at 427.[5]  While constant surveillance might be MDMR's preference, it is not the "minimum enforcement measure[] required to assure reasonable compliance with" the fishing regulations it is designed to enforce.  *Tart v. Com. of Mass.*, 949 F.2d 490, 499 (1st Cir. 1991).

   Nor is the MDMR Rule limited in terms of place.  The tracker is always on, regardless of the location of the vessel.  While the Addendum exempts holders of state-only lobster permits, ECF No. 1-1 at § 3.0, federally permitted vessels are tracked in the very same state waters.  *Id.* at Appx. B.  They are also tracked in their tuna fishing grounds, while undergoing repairs, while they picnic with their families, or even while their boats are docked, moored, or in the yards of their homes.  ECF No. 7-1 at § D.  Indeed, there is not a single place where these fishermen are not subject to constant search.  If the Rule were truly limited in place, its surveillance would be limited to only those places where MDMR needs assistance with its offshore enforcement efforts – that is, within federal waters, the one and only venue of this closely regulated industry.

---

[5] If, as the State claims, "spot checks" like these lack the "accuracy, reliability and precision that would allow DMR and other fishery managers to characterize a fishery occurring over vast areas and far from shore," *Opp.* at 15, then why would the ACCSP require "matching reported trip data with location data" as part of auditing compliance?  ECF No. 1-1 at § 3.2.3.

Finally, the MDMR Rule is not limited in terms of scope. While the State argues that the Rule "limits government discretion by tracking only location data of licensed commercial fishing vessels," *Opp.* at 16, it does not limit government discretion in terms of when, where and for what purpose these vessels can be tracked or how the data can be used. It is axiomatic that "a valid inspection regime requires 'certainty and regularity' of application." *Rivera-Corraliza*, 794 F.3d at 221-22 (quoting *Burger*, 482 U.S. at 703). But the only certainty and regularity about the tracking requirement before the Court is that vessels are to be *always* tracked; everything else – including who will access the data and how it will be used specifically – remains uncertain. Indeed, the Rule broadly allows MDMR and other "state of federal entities" to access a data map "to query and visualize trip locations" in connection with their "offshore enforcement efforts." ECF No. 1-1 at §§ 2.1, 3.2.3. There are no limits placed on the myriad agencies that can engage in "offshore enforcement efforts" using this data, the types of "offshore enforcement efforts" that these agencies can engage in using the data, "how they can and should" conduct these efforts based on the data, or the permissible purposes that these "enforcement efforts" can further.[6] Put differently, the MDMR Rule does not alert vessel "owners that their premises are 'subject to periodic inspections undertaken for specific purposes.'" *Tart,* 949 F.2d at 498 (quoting *Burger,* 482 U.S. at 703). Rather, the MDMR Rule essentially allows the State to maintain a constant presence on a vessel *at all times* for purposes of ascertaining *all* of its movements, movements that can be shared with any number of other law enforcement agencies for purposes that these agencies would have the unfettered discretion to pursue.

In the end, "[w]here an action is taken that cannot serve the administrative purpose—either because the threat necessitating the administrative search has been dismissed, or because the action is simply unrelated to the administrative goal—the action clearly exceeds the scope of the permissible search."

---

[6] *See Rivera-Corraliza*, 794 F.3d at 222 (noting how courts approve of regimes that allowed agents to "enter the premises of liquor dealers for the purpose of examining articles or objects subject to tax," to "enter the premises of gun dealers for the purpose of inspecting or examining (1) any records or documents required to be kept and (2) any firearms or ammunition kept or stored," to "examine the records of junkyard operators and any vehicles or parts of vehicles on the premises that are subject to the statute's record keeping requirements," or to allow entry "into drug-storage facilities to determine whether 'any of the provisions of this chapter are being violated and to secure samples or specimens" (internal citations, quotation marks and alterations omitted)).

*United States v. McCarty*, 648 F.3d 820, 835 (9th Cir. 2011).  Here, in the context of regulating the federal lobster fishery, there is no possible administrative purpose that necessitates surveilling a vessel that is not lobster fishing.  Once a fishing vessel is no longer lobster fishing in federal waters, MDMR has no reason to continue its search.  *Cf. United States v. Miles,* 247 F.3d 1009, 1014–15 (9th Cir. 2001) (where police officer continued to search box in a defendant's pocket after concluding the box could not possibly be a weapon, the search was impermissible).

### 3. The MDMR Rule Violates Equal Protection.

While the State argues that the MDMR Rule is not subject to strict scrutiny because it does not "impinge" or "negatively impact" a constitutional right, *Opp.* at 21, it is axiomatic that an individual has a "reasonable expectation of privacy in the whole of his physical movements." *Carpenter*, 585 U.S. at 313.  Because MDMR's tracker mandate impinges on that constitutional right, it is indeed subject to strict scrutiny.  *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (stating that laws "imping[ing] on personal rights guaranteed by the Constitution" are subject to strict scrutiny).  As explained in the Plaintiffs' opening brief, because MDMR cannot possibly justify why its interest in promoting "offshore enforcement efforts" justifies *constant* surveillance of one individual fishing for lobster in state waters while another individual fishing for the very same species in the very same waters is free from *any* surveillance, the MDMR Rule does not survive strict scrutiny.

### 4. The MDMR Rule is Void for Vagueness.

The State claims that the MDMR Rule is not void for vagueness because 12 M.R.S. § 6174(3) provides that a violation of the Rule results in "a fine of not less than $100 and could lead to a possible state license suspension." *Opp.* at 22.  Of course, these are minimum penalties, and the State does not explain what circumstances *will* lead to a license suspension or to a fine of *more* than $100.  The State also does not address any of the other ambiguities addressed in the Plaintiffs' motion, such as whether intentional and unintentional violations will be treated differently, whether any additional, non-data driven individualized suspicion will be required before the data can be used to bring other civil enforcement actions, or whether

criminal enforcement actions can rely on the new electronic data absent a warrant. It would seem self-evident that the Rule's oblique reference to "offshore enforcement efforts" leaves fishermen in the dark about the scope of the penal consequences they may suffer due to the constant surveillance of their vessels.

### 5. The Plaintiffs' State Claims are Not Barred by the Eleventh Amendment.

The State claims that the Eleventh Amendment bars the Plaintiffs' claims under the Maine APA because federal courts do not have jurisdiction "to award injunctive relief against state officials based upon violations of state law." *Opp.* at 23 (citation omitted). In addition to the constitutional issues raised, however, the MDMR Rule implements a *federal* addendum arising under a *federal* statue, the Atlantic Coastal Fisheries Cooperative Management Act ("ACA"), that requires a *Congressionally authorized* interstate compact, the Atlantic Coast Marine Fisheries Commission ("ASMFC"), to prepare and adopt a coastal fishery management plan for the *federal* lobster fishery. 16 U.S.C. § 5104(a)(1). Although the State claims that "neither the Commission nor its member states are constrained by the MSA or its National Standards in modifying the Lobster Plan or promulgating state regulations for the lobster fishery," *Opp.* at 4 n. 5, they cite no law for this proposition (which is notably absent from the ASMFC's own brief) and provide no explanation for why coastal fishery management plans for the federally regulated ("EEZ") waters can ignore these standards, particularly when the ASMFC's coastal plan "is the equivalent of the Magnuson–Stevens Act's FMP, for coastal fishery resources…." *Campanale & Sons, Inc. v. Evans*, 311 F.3d 109, 111–12 (1st Cir. 2002).[7] Because the "questions of law at issue in this suit are therefore only marginally questions of [state] law, with a strong federal cast," *Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd.* 633 F.3d 20, 33 (1st Cir. 2011), the Eleventh Amendment is not a bar to the Plaintiffs' state claims.

Dated at Portland, Maine this 12th day of March, 2024.

/s/   Thimi R. Mina
      Thimi R. Mina

---

[7] Indeed, the Federal Lobster FMP was withdrawn primarily because the ASMFC was in a better position to develop regulations that complied with the MSA's national standards and "[NMFS] expects that the state management plan initiative will be guided by the national standards and guidelines to ensure effective conservation and management of the American lobster resource." American Lobster Fishery; Removal of Regulations, 61 FR 13478-01.

      /s/ <u>Alfred C. Frawley IV</u>
        Alfred C. Frawley IV

        McCloskey, Mina, Cunniff & Frawley, LLC
        12 City Center
        Portland, Maine 04101
        207.772.6805
        207.879.9375
        tmina@lawmmc.com
        afrawley@lawmmc.com

        *Attorneys for Plaintiffs Frank Thompson, Joel Strout, Jason Lord, Chris Smith and Jack Cunningham*

## CERTIFICATE OF SERVICE

I, Alfred C. Frawley IV, hereby certify that on this 12th day of March, 2024, I filed the foregoing **PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** with the CM/ECF system, which shall send notification of such filing to counsel of record for all parties.

Dated at Portland, Maine, this 12th day of March, 2024.

/s/  <u>Alfred C. Frawley IV</u>
Alfred C. Frawley IV

McCloskey, Mina, Cunniff & Frawley, LLC
12 City Center
Portland, Maine
Tel.: 207.772.6805
Fax: 207.879.9375
afrawley@lawmmc.com

9