UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRANK THOMPSON, JOEL STROUT, FRANK THOMPSON, JASON LORD, CHIS SMITH, and JACK CUNNINGHAM,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK KELIHER, in his official capacity as COMMISSIONER, MAINE DEPARTMENT MARINE RESOURCES,<br><br>Defendant. | Docket No. 1:24-cv-00001-JAW |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**NOW COME** Plaintiffs Frank Thompson, Joel Strout, Jason Lord, Chris Smith, and Jack Cunningham (collectively, the "Plaintiffs), by and through their undersigned attorneys, in opposition to both Defendant Patrick Keliher's Motion to Dismiss (ECF No. 23) (MDMR's "Motion") and the Memorandum filed in Support thereof by *amicus curiae* the Atlantic States Marine Fisheries Commission ("ASMFC") (ECF No. 22).

**I.    THE PLAINTIFFS' ALLEGATIONS[1]**

As federally permitted lobster fishermen residing in Maine, the Plaintiffs and thousands of other federally permitted Maine fishermen are subject to regulations promulgated by both the Maine Department of Marine Resources ("MDMR") and the National Marine Fisheries Service ("NMFS").  The Plaintiff's Complaint concerns a recent MDMR rule adopting Addendum XXIX to Amendment 3 the ASMFC's American Lobster Fishery Plan (the "MDMR Rule").  In short, the MDMR Rule requires all federally permitted Maine lobster fishermen to install an electronic

---

[1] The Plaintiffs' *Motion for Preliminary Injunction* provides a detailed summary of the Plaintiffs' allegations and is incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

tracker on their fishing vessels that remains constantly powered and reports the location of the vessel at a "ping" rate of once per minute. *Id.* at ¶ 58.

The constant monitoring required by the MDMR Rule is what can only be characterized as a drastic departure from past reporting requirements. Although Maine fishermen have long been required to self-report their location and catch data, MDMR's tracking device will report each vessel's movements once per minute regardless of whether the boat is engaged in lobster fishing in federal waters or whether it is even lobster fishing at all. *Compl.* at ¶¶ 10, 55. The stated purpose of this surveillance is allegedly fourfold: 1) to collect "high resolution spatial and temporal data" on the fishery; 2) to improve risk reduction efforts under the Atlantic Large Whale Take Reduction Program (the "ALWTRP"); 3) to "prioritize the development of offshore renewable energy," seemingly at the expense of the fishery itself; and 4) to promote "the efficiency and efficacy of offshore enforcement efforts." *Id.* at ¶ 60. The data collected will be uploaded into a digital map interface that then can be queried by any number of "authorized federal and state administrators," as well as other "state or federal entities with confidential data access," to "query and visualize trip locations" indiscriminately and apparently for any purpose. ECF No. 1-1 at § 3.2.3. Indeed, recent reports suggest that this data has already been provided to students at Maine's public universities studying the fishery, as well as to the U.S. Department of Energy's National Renewable Energy Laboratory as part of its efforts to develop floating wind energy projects in the Gulf of Maine. *See July, 2023 Technical Report* at 10, attached hereto as Exhibit A (describing how "[e]fforts are being made to gain more knowledge around commercial fishing activities in federal waters including through a new reporting requirement for lobstering in federal waters.").

MDMR now seeks to dismiss the Plaintiffs' Complaint on grounds previously raised in its Opposition to the Plaintiffs' Motion for Preliminary Injunction. In addition to the summaries of

2

the Plaintiffs' previously-raised arguments contained below, which have already been briefed at length, the Plaintiffs adopt and incorporate by reference their *Motion for Preliminary Injunction* (ECF No. 7) and reply thereto (ECF No. 17) pursuant to Fed. R. Civ. P. 10(c).

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a claim crosses the plausibility threshold is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Plausibility is not equivalent to probability, but it nevertheless demands a showing that is more than a sheer possibility." *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir. 2019) (internal citation and quotations omitted). In conducting its analysis, the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (citation omitted).

## III.    ARGUMENT

Before the Court is an unprecedented government regulation that, if permitted to stand, would require federally permitted Maine lobster fishermen to install a tracking device on their fishing vessels that would monitor their movements on a minute-by-minute basis (and every six hours when the vessel is moored) "regardless of landing state, trip type, location fished or target species." *See Compl.* at ¶ 10. MDMR's arguments in support of its Rule ignore the critical fact that its tracking requirement goes far beyond what is necessary to accomplish its objectives because, aside from its around-the-clock tracking of federally permitted vessels regardless of the nature of their activities, it requires the tracking of these federally permitted vessels fishing in state waters while imposing no such tracking obligation on their non-federally permitted counterparts fishing in the very same state

waters. MDMR also ignores the undisputed fact that the data it collects can be transmitted to any number of state and federal agencies, as well as to approved quasi-governmental interest groups, at its discretion and without adequate oversight or limitations.

### A.     *The Eleventh Amendment is Not an Absolute Bar to Count III of the Plaintiffs' Complaint.*

Count III of the Plaintiffs' Complaint seeks to invalidate the MDMR Rule on grounds that it is arbitrary and capricious and contrary to law in violation of Maine's Administrative Procedures Act, 5 M.R.S. § 8052. MDMR claims Count III must be dismissed due to the Court's lack of subject matter jurisdiction over the claim because the Eleventh Amendment bars the Court from granting relief against state officials for violations of purely state law. *See Mot.* at 9. *See also MDMR's Opp. to Mot. for Prelim. Inj.* at 23 (ECF 16). The Plaintiffs incorporate by reference their previously-raised counter arguments to that theory pursuant to Fed. R. Civ. P. 10(c). *See Pls.' Reply to Opp. to Mot. for Prelim. Inj.* at 7 (ECF No. 17).

As before, MDMR argues that its Rule does not arise under federal law and therefore is not beholden to federal fishery standards. *See Mot.* at 9. Once again, however, MDMR cites no authority for this proposition. The MDMR Rule specifically incorporates the requirements of federal Addendum XXIX. *See* 13 C.M.R. 188, ch. 25, § 98 ("This rule-making incorporates the requirements in Addendum XXIX (American Lobster) and Addendum IV (Jonah crab) that were approved by the Atlantic States Marine Fisheries Commission (ASMFC) in March 2022."). The Rule further specifies that it will apply to all "federally permitted" lobster license holders regardless of whether or not they are fishing within MDMR's jurisdiction. *Id.* Accordingly, the Plaintiffs' challenge to the MDMR Rule necessarily and obviously exceeds the scope of a simple challenge to a state action under a purely state regulatory scheme because it involves the adoption of a federal policy, promulgated under a federal rule, that is aimed solely at *federally* permitted

4

fishing vessels for the purported purpose of protecting a *federal* fishery. *See* ECF No. 17 at 7 (arguing that "the MDMR Rule implements a *federal* addendum arising under a *federal* statue, the Atlantic Coastal Fisheries Cooperative Management Act ("ACA"), that requires a *Congressionally authorized* interstate compact, the Atlantic Coase Marine Fisheries Commission ("ASMFC"), to prepare and adopt a coastal fishery management."). Indeed, the Amendment calls for regulation in the Exclusive Economic Zone ("EEZ"), which the State concedes is the primary responsibility of the federal government. *See Mot.* at 2, n.4.

As part of the ASMFC's American Lobster Fishery Plan, the Amendment – and, consequentially, the Rule – are governed by the National Standards contained in the Magnuson-Stevens Act ("MSA"). MDMR cites no authority to the contrary. Therefore, the issues before the Court are patently federal in nature and, at most, only tangentially involve state law. *See Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd*. 633 F.3d 20, 33 (1st Cir. 2011). In essence, the Court is being asked to consider in Count III whether the MDMR Rule as developed and enforced by MDMR is contrary to federal law or is arbitrary and capricious because it was promulgated pursuant to a directive in an Addendum that does not comply with the federal standards in the MSA that. *See Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1 (1st Cir. 2007) ("While the Eleventh Amendment prohibits a party from bringing suit against a state in federal court, it does not prohibit a party from bringing suit against a state officer in federal court for prospective declaratory or injunctive relief under federal law").

  **B.**   ***Count I Properly Pleads a Violation of the Plaintiffs' Fourth Amendment Rights to Be Free from Unreasonable Searches and Seizures.***

At bottom, MDMR argues that, under *City of Los Angeles v. Patel*, 576 U.S. 409 (2015) and *New York v. Burger*, 482 U.S. 691 (1987), its Rule is a valid administrative search of a closely

5

regulated industry because the Rule is necessary to further a substantial government interest and is sufficiently limited in scope. *See Mot.* at 10-11. Contrary to MDMR's argument, however, viewing the Rule in full context reveals it as both unnecessary to achieve its overarching purpose and as having a scope greatly exceeding that permitted for a constitutional administrative search.

> 1. **Even if the Plaintiffs Have a Reduced Expectation of Privacy while Commercial Fishing, that Alone Does Not Justify the Overly-Broad Administrative Search Authorized by the Rule.**

MDMR argues that the Plaintiffs have a "greatly reduced expectation of privacy when engaging in an industry that is subject to such pervasive regulation." *Mot.* at 15. While an expectation of privacy may admittedly be *reduced* in a closely regulated industry, this does not equate to a non-existent expectation of privacy because "[b]usiness owners still "possess reasonable expectations of privacy in commercial property with respect to… administrative inspections designed to enforce regulatory statues." *See* ECF No. 17at 2 (quoting *United States v. Hamad*, 809 F.3d 898, 904 (7th Cir. 2016)). This expectation is heightened here because MDMR's search extends beyond the search of commercial vessels fishing for lobsters in federal waters, the only closely-regulated industry the Rule seeks to govern. While MDMR continues to regard the fact that its Rule tracks fishing vessels while they are docked or used for any number of other utterly unregulated purposes as a mere "collateral" or "occasional" consequence of its regulatory scheme, the fact of the matter remains that the Rule infringes on the Plaintiffs' and others' reasonable expectations of privacy both within *and outside* a closely-regulated industry. The Plaintiffs incorporate their *Motion for Preliminary Injunction* (ECF No. 16) and *Reply* thereto (ECF No. 17) in further support of their arguments pursuant to Fed. R. Civ. P. 10(c).

> 2. **The Search Is Not Necessary to Further a Substantial Government Interest.**

In the end, the validity of the MDMR Rule depends on whether its "administrative search"

6

is *necessary* to further a substantial government interest, *New York v. Burger*, 482 U.S. 691 (1987), not simply whether it furthers that interest. If other, less restrictive, avenues are available, the Rule is unconstitutional. *See id.* MDMR argues that its interest in "regulating the lobster fishery and ensuring its long-term viability" supports the scope of the Rule. *See Mot.* at 15. While there is no dispute that this interest is substantial – the long-term health of the fishery is essential to the livelihoods of Maine's lobster fleet – the real issue is whether the Rule as applied is indeed necessary to protect the long-term health of the fishery. On that point, MDMR's arguments fail.

MDMR claims that the "detailed data based on a one-ping-per-minute rate that will be collected from the electronic trackers is necessary to accurately characterizing activity in the fishery, including the locations and density of commercial fishing gear, which "is critical to addressing current and future threats to the fishery and ensuring successful management through improved stock assessment." *Mot.* at 16. The ASMFC's own statistics, however, reveal that the lobster fishery currently is not in danger of being overfished.[2] Accordingly, "future threats" is an inherently vague allegation that could relate to any number of hypothetical obstacles facing the fishery that are both within MDMR's jurisdiction (such as stock assessments in state waters) or completely beyond it (such as the construction of wind farms in federal waters).

MDMR has made no effort to identify these "future harms," let alone articulate how its existing data collection efforts – which require the mandatory self-reporting of a trip and vessel identification number, the trip start and end date, the location and lobster management area, the number of traps hauled and set on each trip, the species and quantity harvested, the number of buoy lines employed, and the soak time of the traps – are insufficient to address these "threats."

---

[2] *See, e.g.*, *The 2020 American Lobster Benchmark Stock Assessment and Peer Review Report indicates record high stock abundance*, available at https://www.asmfc.org/species/american-lobster (last visited Apr. 26, 2024).

*Compl.* at ¶ 55. Apart from alleged dangers to the North Atlantic right whale population, which have already been addressed by Congress through the Consolidated Appropriations Act, 2023. Pub. L. No. 117-328, Div. JJ, 136 Stat. 4459, 6089-92 (2022), it is unclear what "current threats" exist that could justify the near-constant surveillance of Maine lobstermen and women that could not be addressed through less intrusive means (such as limiting tracking to vessels fishing for lobsters in federal waters or to the lesser "ping rates" employed by trackers in other fisheries like the scallop fishery).

Nevertheless, MDMR argues that the Rule is necessary because a less-intrusive method "would compromise reliability and increase the chances of operator error or intentional evasion." *Mot.* at 16. Although MDMR claims this proposition is supported by "common sense," it flies in the face of evidence that Maine lobster fishermen have a history of regulatory compliance. Indeed, the Defendant-Commissioner himself is on record as saying that "the lobster fishery "has been a model of conservation, not only in the management of the lobster resource, but also in its two-decade participation in regulations aimed at protecting large whales."[3] Moreover, MDMR ignores other "common sense" problems that would be caused by the current tracking requirement, namely, the collection of inaccurate and misleading data. Because the Rule requires constant surveillance of vessels while they are fishing for other species, or even when they are not fishing at all, data that does not pertain to the fishery will be imputed to it, thereby leading to inaccurate results. Scallop fishing grounds, for example, will be misinterpreted as lobster fishing grounds, day trips from Maine's islands to the mainland for groceries will be misinterpreted as fishing trips, and anchoring in a cove for a family picnic will be misinterpreted as the placement of a trawl. Put simply, by expanding the Rule's data collection to beyond what is necessary to promote "the

---

[3] *See* Dec. 27, 2019 Ltr. from Commissioner Keliher to NMFS at 1, *available at* ECF No. 61-1 at 19, *Me. Lobstermen's Ass'n, Inc. v. NMFS*, D.D.C. Docket No. 1:21-cv-02509-JEB.

efficiency and efficacy of offshore enforcement efforts" in the federal lobster fishery, the Rule will establish data points that in reality do not exist.

### 3. The Rule Is Not Sufficiently Narrow in Scope and Does Not Serve the Same Functions as a Warrant.

MDMR also argues that its so-called "administrative search" is sufficiently limited in scope because the device tracks "only location data of licensed commercial fishing vessels." *Mot.* at 17. This argument, however, mischaracterizes the scope of the information being collected because the Rule will collect data from these vessels regardless of whether or not they are operating as licensed commercial fishing vessels. Moreover, the location of the vessel is collected with such minute detail that additional information such as trawl locations, fishing patterns, trip details and other commercially sensitive information will certainly be revealed in addition to the vessel's mere "location." Plus, the duration of the search is indefinite; unlike a warrant, which allows the government to search a specific location for specific objects at a specific time, the MDMR Rule authorizes constant surveillance or *all* federally-permitted fishing vessels, whether or not they are fishing in federal waters, in order to collect data not only on their lobster fishing habits, but their other fishing and non-fishing activities.

Put simply, there are literally no limitations on the scope of the Rule. *See Burger*, 482 U.S. at 703 (an administrative search must be "carefully limited" in "time, place and scope"). Unlike traditional warrants, the scope of the "warrant" authorized by the Rule is almost limitless and can be constantly executed on all available information transmitted by a vessel year-round, regardless of the location of the vessel (its place), whether the vessel is being used commercially or recreationally (the time), or whether it is being used for lobster fishing (its scope). In that manner, it is no different than if the government had constant access to location data collected by an individual's cellphone, regardless of whether or not they were suspected of a crime. It is

9

inconceivable that a conventional warrant with the scope of MDMR's "administrative search" would be judicially authorized. Moreover, there is an overwhelming lack of uncertainty and accountability concerning what agencies or interest groups can access the data it generates. *See Pls.' Reply* at 3-6 (ECF No. 17), incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

The cases cited by MDMR in support of its position reveal that they all involve limitations on what evidence can be searched for and collected. In each instance, the searches undertaken in those cases are best described as "spot checks" narrowly designed to enforce specific regulations, and each search was only approved when the premises searched were actually engaged in the regulated activity. *See Burger* 482 U.S. 691 (Searches could only be of vehicle-dismantling industries and were limited to business hours). *U.S. v. Gonsalves*, 435 F.3d 64 (1st Cir. 2006) (search was properly limited to because it only applied during "reasonable hours" and was limited to obtaining samples from mislabeled drugs on premise); *U.S. v. Ponce-Aldona*, 579 F.3d 1218 (11th Cir. 2009) (search was reasonably limited to the physical inspection of vehicles on a public highway for specific regulatory violations by officers on the scene); *Killgore v. City of S. El Monte*, 3 F.4th 1186 (9th Cir. 2021) (inspection properly limited to regular business hours and was limited to the physical inspection of commercial premises by regulating authorities). Unlike here, those searches did not involve constant, around-the-clock surveillance of all regulated individuals whether or not they are then engaged in the regulated activity (i.e., lobster fishing) or even within the commercial premises subject to regulation (in this instance, federal waters). Moreover, in contrast to the situation here (where myriad agencies can access the data in order to further their individual goals), the agencies permitted to conduct the search in the above cases were limited to those authorized to regulate the industry itself and did not include other agencies that might simply find the information useful to further their own interests.

### C. The MDMR Rule Is an Opaque Enforcement Tool.

Finally, MDMR argues, as it did previously, that the Rule sufficiently defines its prohibitions and penalties. *See Mot.* at 23. Even after the parties' briefing on the Plaintiffs' *Motion for Preliminary Injunction*, however, questions remain about how and to what extent MDMR will enforce the Rule. *See* ECF No. 17 at 6-7. To reiterate, the underlying Amendment authorizing the Rule allows MDMR and other agencies to use the collected data for "offshore enforcement" purposes. *Compl.* at ¶ 61. But despite all of the ink spilled in defense of the Rule, MDMR still fails to define what it means by "offshore enforcement" and whether this 2-word phrase is limited to regulations that MDMR is tasked with enforcing or whether it extends to regulations promulgated by other agencies. For example, would the DEA and Coast Guard have access to this data as part of a drug smuggling investigation? Could NMFS use this data to prosecute tuna poachers? Can Homeland Security use this data to enforce immigration regulations? Because the permutations are endless, the Rule is indeed "so standardless as to encourage discriminatory enforcement" because it lacks articulated standards and "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *Mot.* at 24.

**WHEREFORE,** for the reasons stated above and in the Plaintiffs' *Motion for Preliminary Injunction* (ECF No. 7) and in reply thereto (ECF No. 17), the Plaintiffs respectfully request that the Court deny the Defendant's *Motion to Dismiss* in its entirety.

Dated at Porland, Maine this 29th day of April, 2024

/s/ Thimi R. Mina
Thimi R. Mina

/s/ Alfred C. Frawley IV
Alfred C. Frawley IV

        McCloskey, Mina, Cunniff & Frawley, LLC
        12 City Center
        Portland, Maine 04101
        Tel.: (207) 772-6805
        Fax: (207) 879-9375
        tmina@lawmmc.com
        afrawley@lawmmc.com

        *Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I, Alfred C. Frawley IV, hereby certify that on this 29th day of April, 2024, I filed the foregoing **OPPOSITION TO MOTION TO DISMISS** with the CM/ECF system, which shall send notification of such filing to counsel of record for all parties.

Dated at Portland, Maine, this 12th day of January, 2024.

/s/  <u>Alfred C. Frawley IV</u>
Alfred C. Frawley IV

McCloskey, Mina, Cunniff & Frawley, LLC
12 City Center
Portland, Maine 04101
Tel.: (207) 772-6805
Fax: (207) 879-9375
afrawley@lawmmc.com