UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRANK THOMPSON, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil No. 1:24-cv-00001-JAW |
| PATRICK KELIHER, in his official capacity as COMMISSIONER, MAINE DEPARTMENT OF MARINE RESOURCES, | ) ) ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S REPLY
TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant Patrick Keliher, Commissioner, Maine Department of Marine Resources ("DMR"), hereby replies to Plaintiffs' Opposition to Defendant's Motion to Dismiss.

As Plaintiffs accurately note in their Opposition (ECF No. 24), many of the arguments they make in response to Defendant's Motion to Dismiss (ECF No. 23) have previously been fully briefed and responded to in the parties' briefing regarding Plaintiffs' Motion for Preliminary Injunction (ECF No. 7), which is pending before this Court; Defendant hereby incorporates his Opposition to the Motion for Preliminary Injunction (ECF No. 16) to the extent it does not rely on materials outside of the Rule 12(b)(6) record.  *See* Fed. R. Civ. P. 10(c).  Defendant therefore limits this Reply to addressing Plaintiffs' few new substantive arguments and correcting misstatements presented in their Opposition.

I.  **PLAINTIFFS MISSTATE THE PURPOSE OF ADDENDUM XXIX AND THE DMR RULE**

As they do in their Complaint, Plaintiffs blatantly misquote Addendum XXIX and thus mischaracterize the purpose of the Addendum and the corresponding DMR Rule.  Addendum XXIX explains that collection of high-resolution data to better characterize activity in the American lobster fishery is necessary to respond to various challenges facing the industry, including, but not limited to, the development of offshore renewable energy and the inevitable imposition on the industry of further whale risk reduction measures.  *See* Ex. 1 (ECF No. 23-1), § 2.1.  Addendum XXIX and the DMR Rule in no way purport to promote the development of offshore renewable energy development or the implementation of whale risk reduction efforts.  Similarly, Plaintiffs take one section of the Addendum out of context to assert that data collected pursuant to the DMR Rule will be accessed "indiscriminately and apparently for any purpose." Pls.' Opp'n at 2.  But Plaintiffs' assertion is squarely contradicted by the Addendum itself,[1] which explains that data will be accessed to better understand where lobster fishing is occurring and thus address the challenges to the fishery identified in the Addendum.  *See* Ex. 1, §§ 1.0, 2.1; *see also* Tracker Requirement and Instructions for Federal Permit Holders, available at https://www.maine.gov/dmr/fisheries/commercial/fisheries-by-species/lobsters/trackers (last visited May 6, 2024).

The repeated and deceptive misquoting of the Addendum by Plaintiffs must be rejected.  When a document is integral to a complaint—as the Addendum is here—not only may the Court consider the document on a 12(b)(6) motion, but the Court must consider the allegations in the

---

[1] Plaintiffs' assertion is also squarely contradicted by the information that DMR sent the Plaintiffs with the tracking device, attached as Exhibit C to the Complaint, stating, "As with the landings information reported to [DMR] by harvesters and dealers, the spatial information collected through the trackers is designated as confidential through Maine law and regulation."  ECF No. 1-3, PageID # 82.

complaint in light of the full text of the document. *See Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000). If there is any discrepancy between the allegations and the document text, "the exhibit trumps the allegations." *Id.* (quoting *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)).

## II. PLAINTIFFS' CITATION TO A NATIONAL RENEWABLE ENERGY LABORATORY ("NREL") REPORT IS ENTIRELY INAPPOSITE

The NREL Report Plaintiffs attach to their Opposition, "Considerations for Floating Wind Energy Development in the Gulf of Maine," has no bearing on Defendant's Motion to Dismiss. The report was produced by two entities not involved with Addendum XXIX or the DMR Rule—the U.S. Department of the Interior's Bureau of Ocean Energy Management and the U.S. Department of Energy[2]—and has the distinct purpose of discussing considerations for developing offshore wind energy. *See* NREL Report, Pls.' Ex. A (ECF. No. 24-1), iv, vii. The report's discussion of Addendum XXIX as an example of "investments in data collection for lobster and other commercial fishing activities [to] begin to close important ocean-use knowledge gaps," NREL Report, Pls.' Ex. A at 40, does not in any way support Plaintiffs' suggestion that data collected pursuant to the DMR Rule is being shared with "students," *see* Pls.' Opp'n at 2, or cast doubt on the lawfulness of the DMR Rule. To the extent the NREL Report is relevant at all, it supports Addendum XXIX's recognition that there are ongoing efforts to develop offshore wind energy and that more data is needed to accurately understand where lobster fishing occurs and avoid conflicts between new (offshore wind energy) and existing (fishing) uses. *See* Ex. 1, §§ 1.0, 2.1, 2.2.4. Plaintiffs continue to grasp at straws to characterize the DMR Rule in a sinister light.

---

[2] DMR was one of six external peer review entities for the Report, which is unsurprising considering that the report deals with the Gulf of Maine. *See* NREL Report, Pls.' Ex. A, v.

### III. PLAINTIFFS MISCONSTRUE THE ELEVENTH AMENDMENT ISSUE

Plaintiffs argue that Count III is not barred by the Eleventh Amendment because the DMR Rule "involves the adoption of a federal policy, promulgated under a federal rule, that is aimed solely at federally permitted fishing vessels for the purported purpose of protecting a federal fishery." Pls.' Opp'n at 4-5 (emphasis omitted). Putting aside the multiple factual errors in Plaintiffs' characterization of the DMR Rule,[3] Plaintiffs continue to fail to grapple with the fact that Count III alleges that Defendant has violated *state law*, Maine's Administrative Procedure Act, 5 M.R.S. § 8052. On its face, Count III asks a federal court to order a state agency to comply with state law. The precedent is clear that this Court does not have jurisdiction over such a claim. *See* Def.'s Mot. to Dismiss at 9. Plaintiffs have not cited a single case supporting abrogation here of this principle of black letter law.[4]

### IV. PLAINTIFFS SUBSTANTIVELY SHIFT AWAY FROM THE FOURTH AMENDMENT THEORY PLEADED IN THEIR COMPLAINT, TO NO AVAIL

The Fourth Amendment issues in the case have been adequately briefed, both regarding Defendant's Motion to Dismiss and Plaintiffs' pending Motion for Preliminary Injunction. However, it bears noting that Plaintiffs in their Opposition focus on the implications of the tracking requirement for times when commercial lobstering vessels are being used for purposes other than commercial lobstering. *See* Pls.' Opp'n at 6-10. Plaintiffs' Complaint, in contrast,

---

[3] As previously explained, Addendum XXIX is a creation of the multistate Atlantic States Marine Fisheries Commission, not of any federal entity. *See* Def.'s Mot. to Dismiss at 4-6, 9. Neither the Commission nor individual member states such as Maine are constrained by the Magnuson-Stevens Act's ("MSA") National Standards in promulgating state regulations for the American lobster fishery. *See* Def.'s Mot. to Dismiss at 3 n.5. Regardless, Plaintiffs have pleaded in Count III that the DMR Rule violates Maine state law, *not* the MSA.

[4] Also as previously explained, *see* Def.'s Mot. to Dismiss at 10, Plaintiffs' citation to cases involving *Burford* abstention, such as *Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20 (1st Cir. 2011), are inapposite. Plaintiffs' citation to *Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1 (1st Cir. 2007) also is inapposite because that case dealt with a federal court's jurisdiction to order relief "against a state officer . . . *under federal law*." *Id.* at 24 (emphasis added).

focuses on Plaintiffs' purported privacy interests in the location of their lobster traps (that is, their privacy interests while engaging in commercial lobstering). *See* Compl. (ECF No. 1) at ¶¶ 81-83.

This shift does not help Plaintiffs, for two reasons. First, in assessing a motion to dismiss pursuant to Rule 12(b)(6), a court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences *that fit the plaintiff's stated theory of liability*." *Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 5 (1st Cir. 2005) (emphasis added) (quotation marks omitted). This Court therefore must assess the plausibility of the theory *pleaded in Plaintiffs' Complaint*—that the DMR Rule violates the Fourth Amendment because it impinges on Plaintiffs' reasonable expectation of privacy while engaging in commercial lobstering. Second, despite the focus of Plaintiffs' argument in their Opposition, they have failed to plausibly *plead* that these Plaintiffs, or commercial lobstering vessels with federal permits in general, typically use their licensed lobstering vessels for non-lobstering purposes such that the DMR Rule raises non-incidental privacy concerns (when a vessel is used for non-commercial fishing purposes) or accuracy concerns (when a vessel is used for commercial fishing purposes other than lobstering).

For example, Plaintiffs have not pleaded that scallop fishing by commercial lobstering vessels is so prevalent, and that the movement patterns of vessels while scalloping is so indistinguishable from the patterns while lobstering, that the American lobster fishery data will be substantially inaccurate. Regarding the use of lobster fishing vessels for purposes other than commercial fishing, it is simply not plausible that grocery runs or a family picnic in a cove would be misinterpreted as lobstering. *See* Pls.' Opp'n at 8. Addendum XXIX specifically notes that the ping-per-minute data collection rate was adopted precisely because it best allows for distinguishing between the distinctive movement pattern of setting and hauling lobster traps and

other activities, such as "steaming" (transiting) and remaining stationary. *See* Ex. 1, §§ 2.2.1, 2.2.5; pp. 15-16, 36-37.

In any event, Plaintiffs' newfound emphasis on their purported privacy interests while not engaging in commercial fishing is misplaced because the premises in question—commercial fishing vessels—already may be boarded and inspected *at any time* by government authorities without reasonable suspicion of a violation. *See* Def.'s Mot. to Dismiss at 15. Plaintiffs' insistence that they have a heightened expectation of privacy when they are using their permitted commercial lobstering vessels for anything other than lobstering is simply false.

Plaintiffs' attempts to belittle the necessity of the DMR Rule are also unavailing. For example, they suggest that active management of the American lobster fishery is unnecessary because the fishery "currently is not in danger of being overfished." Pls.' Opp'n at 7. But their use of the word "currently" does too much work. Plaintiffs cite a 2020 stock assessment, but it is axiomatic that the state of a fishery changes over time due to harvesting practices, natural conditions, and anthropogenic environmental impacts, like climate change. And Plaintiffs are entirely off-base in suggesting that the future imposition of regulations concerning right whales is not a legitimate concern. *See* Pls.' Opp'n at 8. By its own terms, the Consolidated Appropriations Act merely creates a federal regulatory grace period through the end of 2028. *See* Pub. L. No. 117-328, Div. JJ, 136 Stat. 4459, 6089-92 (2022). There is no question that federal regulators will come back with new proposed whale risk reduction measures at the earliest possible juncture, and state lobster fishery managers must be prepared to respond with better lobster fishing data than they have now.

**V. PLAINTIFFS HAVE NOT PLAUSIBLY PLEADED THAT THE DMR RULE IS UNCONSTITUTIONALLY VAGUE**

Finally, it bears repeating that, although they speculate about future uses of the location

6

data collected pursuant to the DMR Rule, Plaintiffs have not pleaded that the DMR fails to provide affected lobstermen with fair notice of *what the Rule itself requires*. The Rule plainly requires installation of tracking devices on certain licensed lobster vessels and prohibits disabling those devices while the vessels are in operation. *See* Ex. 2 (ECF No. 23-2), §§ (B)-(D). Speculation about future uses of the location data collected by the tracking devices is not properly a part of the constitutional vagueness analysis regarding the DMR Rule. *See* Def.'s Mot. to Dismiss at 22-24.

## CONCLUSION

For the reasons stated in Defendant's Motion to Dismiss and this Reply, Defendant respectfully requests that the Court grant Defendant's Motion and dismiss Plaintiffs' Complaint.


Dated: May 13, 2024                    Respectfully submitted,

                                       AARON M. FREY
                                       Attorney General


                                       */s/ Jack Dafoe*
                                       Jack Dafoe
                                       Valerie A. Wright
                                       Assistant Attorneys General
                                       6 State House Station
                                       Augusta, ME  04333-0006
                                       Tel. (207) 626-8800
                                       Jack.Dafoe@maine.gov
                                       Valerie.A.Wright@maine.gov

                                       Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants as identified in the CM/ECF electronic filing system for this matter, as follows:

Alfred Cecil Frawley, IV
McCloskey, Mina, Cunniff, & Frawley LLC
12 City Center
Portland, ME 04101
(207) 772-6805
afrawley@lawmmc.com

Thimi R. Mina
McCloskey, Mina, Cunniff, & Frawley LLC
12 City Center
Portland, ME 04101
(207) 772-6805
tmina@lawmmc.com

Sean H. Donahue
Donahue, Goldberg & Herzog
1008 Pennysylvania Ave., SE
Washington, DC 20003
(202) 277-7085
sean@donahuegoldberg.com

Russell B. Pierce, Jr.
Norman Hanson DeTroy, LLC
Two Canal Plaza
P.O. Box 4600
Portland, Maine 04112
(207) 553-4621
rpierce@nhdlaw.com

Dated: May 13, 2024                    */s/ Jack Dafoe*
                                       Jack Dafoe
                                       Assistant Attorney General
                                       6 State House Station
                                       Augusta, ME 04333-0006
                                       (207) 626-8800
                                       Jack.Dafoe@maine.gov